IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRICE et al.., <br><br>    *Plaintiffs*, <br><br>v. <br><br>FEDERAL BUREAU OF PRISONS et al., <br><br>    *Defendants*. | No. 21 C 542 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ricky Price, Shandall Thomas, Thomas Houser, and Anthony Williams bring this suit against the Federal Bureau of Prisons ("BOP"), Director of the BOP Michael Carvajal, Metropolitan Correctional Center, Chicago ("MCC Chicago") Warden, Russell Heisner, and MCC Chicago Health Administrator, Mary Beth Pence, alleging that Defendants' measures for combating the COVID-19 pandemic are inadequate and violate their rights under the Fifth and Eighth Amendments. Before the Court is Defendants' motion for summary judgment. (Dkt. 25). Defendants' motion [25] is granted.

## BACKGROUND

Plaintiffs in this case are four federal inmates. (Dkt. 26 ¶ 1; Dkt. 46 at 1–2 ¶ 1). At the time of this filing, Ricky Price, Shandall Thomas, and Thomas Houser were housed at MCC Chicago while Anthony Williams was a resident of the BOP's United States Penitentiary Atlanta Facility in Georgia. (Dkt. 46 at 1–2 ¶ 1; Pltf. Ex. 11). Defendants are the BOP along with three officers of the BOP. (Dkt. 26 ¶ 1; Dkt. 46 at 1–2 ¶ 1). Plaintiff alleged four counts in the Amended Complaint. (Dkt. 20). The first count, under the Administrative Procedure Act ("APA"), 5 U.S.C.

1

§§ 702, 706(2), raised the BOP's "failure to follow its own regulations" as a violation of the APA, pointing specifically to the BOP's regulations for the handling of infectious diseases. *Id*. The second count in the Amended Complaint alleged a violation of the Fifth Amendment "due process right to conditions of reasonable health and safety" and prohibition on punishment of pre-trial detainees. *Id*. The third and fourth counts alleged violations of the Eighth Amendment protection from cruel and unusual punishment. *Id*. The Plaintiffs seek declaratory and injunctive relief. *Id*.

The basis for the Amended Complaint is the handling at MCC Chicago of the COVID-19 pandemic. Plaintiffs contend MCC Chicago acted improperly in the implementation of procedures for vaccines, testing, quarantine, masking, symptom screening, and sanitation. *Id*. Additionally, Plaintiffs ask the Court to direct MCC Chicago to hire "an infectious disease/public health expert to advise and monitor COVID control efforts" and consult with infection control expert engineers on improvements to ventilation and filtration systems and cohort analysis of stool for COVID-19 positive housing areas. *Id*. Plaintiffs raise concerns about the identification and treatment of moderate and severe cases of COVID-19 for inmates housed at MCC Chicago. *Id*. Plaintiffs also ask that Defendants transparently share COVID-19 data, plans and guidance through, for example, "daily or weekly updates on a website." *Id*.

The key issue in the motion for summary judgment is whether Plaintiffs exhausted administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The BOP's regulations dictate a process for the formal review of inmate complaints. 28 C.F.R. §§ 542.10–542.19; (Dkt. 26 ¶ 2; Dkt. 46 at 2 ¶ 2). At the first level, the BOP requires inmates raise the issue to staff informally. 28 C.F.R. § 542.13(a). At MCC Chicago, the first informal step is the submission of a BP-8 form. (Dkt. 26 ¶ 4; Dkt. 46 at 2 ¶ 4). If an informal complaint is ineffective in resolving the issue, an inmate may then submit to staff a

BP-9 form to initiate the formal review process. 28 C.F.R. § 542.14(c); (Dkt. 26 ¶ 4; Dkt. 46 at 3 ¶ 4). After filing form BP-9, the institutional warden has twenty days to respond which can be extended by an additional twenty days. 28 C.F.R. § 542.18; (Dkt. 26 ¶ 5; Dkt. 46 at 4 ¶ 5). If the inmate is unsatisfied with the response, including if the inmate receives no response in the designated period, he or she may file an appeal with the regional director through form BP-10 within twenty days. 28 C.F.R. §§ 542.15, 542.18; (Dkt. 26 ¶ 5; Dkt. 46 at 4 ¶ 5). Following an opportunity for response from the regional director, the inmate may then appeal to the general counsel by submitting BOP form BP-11. *Id.* Appeals to the general counsel are the final form of administrative appeal. 28 C.F.R. § 542.15; (Dkt. 26 ¶ 6; Dkt. 46 at 4–5 ¶ 6). Generally, inmates should be able to obtain each of these forms from his or her assigned Correctional Counselor or Unit Manager. (Def. Ex. F ¶ 6).

Plaintiffs Price, Thomas, and Williams each signed an intake screening form acknowledging receipt of the BOP Inmate Admission and Orientation Handbook ("the Handbook"), in which the BOP administrative remedy process is outlined.[1] (Dkt. 48 ¶ 1; Def. Ex. B; Def. Ex. C; Def. Ex. D; Def. Ex. E at 39–40; Def. Ex. F ¶¶ 12–13). The Handbook does not explicitly state that administrative remedies must be exhausted before filing a lawsuit. (Def. Ex. E at 39–41). The Handbook details how a reply to a complaint must be made as soon as possible when the complaint is determined to be an emergency and "threatens the inmate's immediate

---

[1] Specifically, under "Problem Resolution," the Handbook describes the process as follows: "The BOP emphasizes and encourages the resolution of complaints. The first step of the Administrative Remedy process is to attempt at **Informal Resolution**, utilizing the appropriate Informal Resolution form (BP-8) . . . . When an informal resolution is not successful, an inmate can access the Administrative Remedy Program. All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member. If the issue cannot be informally resolved, a formal complaint may be filed with a Request for Administrative Remedy (formerly BP-229), commonly referred to as a BP-9. The inmate may place a single complaint or related issues on the form. . . . The inmate will return the completed BP-9 to the Correctional Counselor, who will deliver it to the Administrative Remedy Coordinator (BP-9 will be rejected unless processed through staff)." The Handbook goes on to outline the remaining steps of the process through filing a BP-11.

3

health or welfare." *Id*. at 40–41. Defendants claimed the MCC was unable to locate Houser's intake screening form and therefore did not submit a signed acknowledgment of Houser's receipt of the Handbook. (Def. Ex. F ¶ 13). However, Defendants asserted Houser would have received a Handbook as a matter of routine. *Id*.

The SENTRY computer program is an electronic recordkeeping system employed by the BOP for maintaining records of inmates, including records of formal administrative remedy requests. (Dkt. 26 ¶ 7; Dkt. 46 at 5–6 ¶ 7; Def. Ex. A; Def. Ex. G ¶ 4). The SENTRY database only tracks the filings of formal remedy requests (BP-9) and does not track attempts at informal resolution (BP-8). (Def. Ex. G ¶ 4). From January 31, 2020, to January 30, 2021, MCC Chicago processed a total of one hundred sixteen formal remedy requests. *Id*. The descriptions of the requests cover a range of issues.[2] (Def. Ex. G Att. 2). Of the requests, a number cited concerns related to COVID-19. For example, "Inmate states staff should be tested for COVID;" "Inmate wants to know why he is still in quarantine;" "Inmate is concerned with COVID exposure w/ cell inmates." *Id*. Others referenced general concerns related to conditions at MCC Chicago. For example, "Inmate has concerns with safety conditions of unit;" "Inmate requesting program be reformed." *Id*. The number of formal complaints in this time range (116) was a marked increase from the previous year. (Def. Ex. G ¶ 5). From January 31, 2019, to January 30, 2020, the BOP processed eighty-two formal remedy requests. *Id*.

The SENTRY records show no requests filed by Plaintiffs Price, Houser, or Thomas. (Def. Ex. A; Def. Ex. G Att. 2). SENTRY records show two requests filed by Plaintiff Williams. (Dkt. 26 ¶ 8; Dkt. 46 at 6–7 ¶ 8; Def. Ex. A ¶ 6; Def. Ex. A Att. 2). The substance of Williams' requests

---

[2] Some examples of these brief descriptions are: "Inmate is requesting lower bunk;" "Inmate has multiple complaints;" "Inmate is requesting compassionate release;" "Inmate states complaint against staff;" "Inmate is requesting more than two phone calls;" "Inmate is requesting pain medication;" "Inmate is requesting blankets, mattress;" amongst other claims.

is described in the SENTRY system as "Inmate is requesting medical treatment for foot," although this summary was drafted by someone other than Williams. (Dkt. 26 ¶ 7–8; Dkt. 46 at 5–7 ¶ 7–8; Def. Ex. A ¶ 6; Def. Ex. A Att. 2). Plaintiffs Houser and Thomas never submitted administrative remedy requests, informal or formal, related to COVID-19. (Dkt. 26 ¶¶ 7–8; Dkt. 46 at 5–7 ¶¶ 7–8).

While Price never filed a formal remedy request (BP-9), he did submit an informal remedy request (BP-8) in May 2020 wherein he expressed concerns with the reaction to COVID-19 at MCC Chicago. (Pltf. Ex. 1 Att. A; Dkt. 46 at 8 ¶ 4; Dkt. 48 ¶ 4). Specifically in the BP-8 Price submitted, he claimed "Due to my medical conditions I am at high risk of contracting COVID-19 . . . and COVID-19 is rising here at the MCC, Chicago at a[n] alarming rate." (Pltf. Ex. 1 Att. A; Dkt. 46 at 8 ¶ 4; Dkt. 48 ¶ 4). Price further wrote, "I wish the M.C.C., Chicago take this issue very serious, just asking people are they alright isn't going to stop the spread of COVID-19." *Id*. The BP-8 Price submitted includes a notation seemingly signed by the Correctional Counselor indicating that a BP-9 was issued to Price on May 20, 2020. *Id*.

Lieutenant Dana Taylor, a Pre-Trial Unit Manager at MCC Chicago, stated in a signed declaration, "At all times I have worked as Unit Manager, including during the period of modified operations and to present day, I have always directly provided, or instructed the Counselors I supervised to provide, grievance forms to other inmates in the various housing units whenever they requested them." (Def. Ex. F ¶ 7). Lieutenant Taylor was the assigned Unit Manager for each of the four plaintiffs at times during 2020 and 2021. *Id*. Lieutenant Taylor further claimed, "During the time I have served as Unit Manager, from May 2020 to present date, BP-8 through BP-11 forms have been and continue to be freely available upon request." *Id*. at ¶ 8. Inmates may also utilize computer workstations to submit electronic "Inmate Requests to Staff" to communicate

requests for administrative grievance forms. *Id*. at ¶ 9. Lieutenant Taylor does not recall any occasion where any of the four Plaintiffs requested a BP-8, BP-9, BP-10, or BP-11 from himself or other staff. *Id*. at ¶ 10.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

"Prisoners must properly exhaust all available administrative remedies before pursuing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (citing 42 U.S.C. § 1997e(a)). Moreover, the inmate must exhaust his grievances according to prison procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). Inmates must strictly comply with the exhaustion requirement. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). While exhaustion requirements are strict, failure to exhaust is an affirmative defense and the Defendants maintain the burden of proof for demonstrating Plaintiffs failed to exhaust. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). To be available as an administrative remedy, the process must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). The exhaustion requirement "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard. *See, e.g., Hebron v. Baldwin*, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020) (citing *Jones v. Dart*, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases)). If there is conflicting evidence on the question of exhaustion, the court may hold a hearing on exhaustion issues, permitting whatever discovery is deemed appropriate. *Pavey v. Conley*, 544 F.3d 739, 742.

## DISCUSSION

At issue is whether the steps taken by the Plaintiffs properly exhausted administrative remedies as required under the PLRA. 42 U.S.C. § 1997e(a). ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). To exhaust remedies, Plaintiffs are required to file complaints and appeals as proscribed by the administrative rules at MCC Chicago. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). "The exhaustion requirement's primary purpose is to 'alert [ ] the state' to the problem and invite corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

Exhaustion requirements are mandatory, and courts are required to strictly enforce the requirements. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, the inquiry hinges on the availability of administrative remedies. An inmate is only required to follow the grievance procedure insofar as the process is available. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "A remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance

7

or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. In other words, a remedy is not considered to be available in fact if inmates do not have genuine access to the grievance process. For example, if inmates were not informed of administrative remedies, they are not required to exhaust such remedies. *King*, 781 F.3d at 896. Along the same lines, if prison officials interfere with an inmate's ability to exhaust, "the process that exists on paper becomes unavailable in reality." *Kaba*, 458 F.3d at 528. The availability of administrative remedies is "a fact-specific inquiry." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018).

Plaintiffs claim the administrative remedy process was not available in fact. To support this claim, Plaintiffs submitted six declarations on behalf of three of the four defendants as well as a BP-8 form submitted by Price. (Pltf. Ex 1; Pltf. Ex. 2; Pltf. Ex. 3; Pltf. Ex. 6; Pltf. Ex. 7; Pltf. Ex. 8). Plaintiffs' counsel noted in the Response to Defendants' Rule 56.1 Statement of Material Facts that the signatures for these declarations were forthcoming: "Plaintiffs attach hereto three declarations from Plaintiffs Price, Houser, and Thomas; as with declarations previously submitted in this case, due to the difficulties of communication and transmission of documents during the present period, Plaintiffs' counsel do not yet have the signature pages for these declarations and will file them once they have arrived in the mail." (Dkt. 46 fn. 2). The unsigned declarations were filed with the Response to Defendants' Rule 56.1 Statement of Material Fact on May 11, 2021, and over the course of almost a year, Plaintiffs have yet to provide these signature pages to the Court.

Under 28 U.S.C. § 1746, "an unsworn declaration which is dated and signed by the declarant 'under penalty of perjury' and verified as 'true and correct' may be used, in lieu of a sworn affidavit, to support or respond to a motion for summary judgment." *London v. Guzman*,

26 F.Supp.3d 746, 753 (N.D.Ill. 2014) (quoting *Trapaga v. Cent. States Joint Bd. Local 10*, 2007 WL 1017855, at *2 (N.D.Ill. Mar. 30, 2007)). An "affidavit" that does not subject the declarant to the penalties for perjury is not "within the range of evidence" that a district court may consider. *See DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990) (citing *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985)). "The benefit of a sworn statement is that the Court recognizes that the affiant is putting himself at risk in stating the facts that are contained within the statement." *Hudson v. Preckwinkle*, 2015 WL 1541787, at *13 (N.D.Ill. Mar. 31, 2015). While the declarations submitted by Plaintiff included, "I declare under penalty of perjury that the foregoing is true and correct," signatures of the Plaintiffs were never submitted to the Court. In spite of the Court giving plaintiffs' counsel time to file the signatures, after one year of the case pending without sworn and signed statements, the docket reflects that no such signed statements were ever filed. As such, the declarations were not made under penalty of perjury and will not be given weight by this Court.

The Seventh Circuit has upheld district court decisions to rely on unsigned statements as part of summary judgment evidence since "a refusal to strike or disregard portions of an affidavit in a motion for summary judgment is reviewed for an abuse of discretion." *Verser v. Elyea*, 2003 WL 22535211, at *2 (7th Cir. 2003) (Citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 318 (7th Cir. 2003)). However, in *Verser*, the opposing party's admission in its response to the statement of material facts "cure[d] the deficiencies." *Id*. Here, Defendants disputed all the relevant claims made by Plaintiffs in the declarations at issue. (Dkt. 48). Defendants admitted that Plaintiff's Exhibit 1, Attachment A is a BP-8 submitted by Price. (Dkt. 48 ¶ 4).

Plaintiffs were required to abide by the regulations at MCC Chicago established by the BOP. 28 C.F.R. §§ 542.10–542.19. If inmates are not aware of the administrative process, the remedies are not actually available, and they are not required to exhaust procedures before bringing a lawsuit. *King*, 781 F.3d at 896. Defendants presented intake screening forms for Plaintiffs Price, Williams, and Thomas including signed acknowledgements that they each received the Handbook. (Def. Ex. B; Def. Ex. C; Def. Ex. D). Defendants claimed Houser would have received a Handbook as part of routine procedures. (Def. Ex. F ¶ 13). The Handbook clearly outlines each step of the grievance process and at no point indicates a limit to the types of grievances the process can be used to redress. (Def. Ex. E at 39–41).

Over one hundred formal remedy requests were processed at MCC Chicago from January 31, 2020, to January 30, 2021, and some of these requests covered the very concerns raised by Plaintiffs in this suit. (Def Ex. G Att. 2). The functionality of a process for administrative remedies does not necessarily mean it was available to an individual inmate. *See Kaba*, 458 F.3d at 686 ("We have no doubt that the Bureau of Prisons . . . has a formal process. But it is unclear based on the evidence before us whether [an individual inmate] could avail himself of it."). However, Plaintiffs have failed to submit admissible evidence to rebut the evidence that the remedies were available.

Plaintiff Williams previously accessed the process when he filed two BP-9 formal remedy request forms addressing issues unrelated to this lawsuit. (Dkt. 26 ¶ 7–8; Dkt. 46 at 5–7 ¶ 7–8; Def. Ex. A ¶ 6; Def. Ex. A Att. 2). Plaintiff Price submitted a BP-8 in May 2020 raising concerns related to COVID-19. (Pltf. Ex. 1 Att. A; Dkt. 46 at 8 ¶ 4; Dkt. 48 ¶ 4). Price's BP-8 form includes a notation that he received a BP-9 form to proceed to the next step on May 20, 2020, but there is no record of Price initiating the formal remedy process. (Pltf. Ex. 1 Att. A; Def. Ex. A; Def. Ex.

10

G Att. 2). Additionally, Lieutenant Taylor, who worked as Unit Manager at some point for each of the four Plaintiffs during 2020 and 2021, claimed in a signed declaration no recollection of any requests for administrative remedy request forms from any of the Plaintiffs. (Def. Ex. F ¶ 10).

There is no admissible evidence to contradict that Plaintiffs were aware of the administrative remedy process at the MCC. As an additional factor, Plaintiffs in this situation were not proceeding pro se and attempting to navigate the grievance procedures at the MCC independently. Rather, at the time of filing this complaint in January 2021, Plaintiffs were represented by capable counsel, experienced in prisoner litigation. (Dkt. 1). While the record shows Plaintiffs themselves were aware of the administrative remedy request process, even if they were not, their counsel certainly was aware and ought to have advised them of the exhaustion requirements.

Still, general awareness of administrative remedies at a given facility is not sufficient to satisfy the question of whether the remedy is available. "[E]xhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016); *see also Dale v. Lappin*, 376 F.3d 652, 655–56 (7th Cir. 2004). The Seventh Circuit held the refusal to provide remedy forms "suffices to show that [an inmate] did not have administrative remedies available." *Gooch v. Young*, 24 F.4th 624, 628 (7th Cir. 2022). A sworn affidavit, especially one that is "detailed, specific, and based on personal knowledge," is "competent evidence to rebut [a] motion for summary judgment." *Kaba*, 458 F.3d at 681 (quoting *Dale*, 376 F.3d at 655). The PLRA does not require "prisoners to go on scavenger hunts just to take the first step toward filing a grievance." *Hill*, 817 F.3d at 1041. However, Plaintiffs here failed to submit signatures under penalty of perjury for statements that raised questions about the availability of

11

the process. (Pltf. Ex 1; Pltf. Ex. 2; Pltf. Ex. 3; Pltf. Ex. 6; Pltf. Ex. 7; Pltf. Ex. 8). As such, no weight is given to Plaintiffs' declarations. Defendants' motion for summary judgment is granted as to all four Plaintiffs for failure to exhaust administrative remedies prior to filing this lawsuit.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [25] is granted. On review of the record of admissible evidence, Plaintiffs Thomas, Williams, Price, and Houser failed to exhaust administrative remedies as required by the PLRA. The case is dismissed without prejudice for failure to exhaust administrative remedies.

Virginia M. Kendall
United States District Judge

Date: March 31, 2022